UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC,<br>  A Delaware Limited Liability Company,<br>DD IP HOLDER LLC,<br>  A Delaware Limited Liability Company, and<br>DB REAL ESTATE ASSETS I LLC,<br>  A Delaware Limited Liability Company,<br><br>          Plaintiffs,<br><br>v.<br><br>MISSOURI DONUTS, INC.,<br>  A Florida Corporation,<br>NORBERTO BOTELHO,<br>  A Florida resident, and<br>MARIA BOTELHO,<br>  A Florida resident,<br><br>          Defendants. | C.A. No. _____ |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition based on the operation of a Dunkin' Donuts franchise by Defendants Missouri Donuts, Inc., Norberto Botelho and Maria Botelho (collectively "Defendants"). Defendants have breached their Franchise Agreement with Plaintiff Dunkin' Donuts Franchised Restaurants LLC, by continuing to operate their Dunkin' Donuts shop after termination of their Franchise Agreement, by refusing to timely remodel the shop, and by refusing to participate in a mandatory Dunkin' program. Plaintiffs seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## The Parties

1. Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006, have been assigned to Dunkin' Donuts Franchised Restaurants LLC. It is engaged in the business of franchising independent businesspersons to operate "Dunkin' Donuts" shops throughout the United States. Dunkin' Donuts franchisees are licensed to use trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts Franchised Restaurants LLC has a license to use and license others to use these marks and trade name and along with its predecessors has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin' Donuts" or "Dunkin'."

3. DB Master Finance LLC, a Delaware limited liability company, is the sole member of Plaintiffs Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC. In

turn, the sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company. The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company. The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company. The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company. The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company. The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is at Canton, Massachusetts.

4. Plaintiff DB Real Estate Assets I LLC ("DB Real Estate I"), a successor-in-interest to Third Dunkin' Donuts Realty, Inc. ("Dunkin' Realty"), is a limited liability company with its principal place of business in Canton, Massachusetts. DB Real Estate I is a wholly-owned subsidiary of Dunkin' Donuts and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' to franchise independent business persons to operate Dunkin' Donuts shops at those locations.

5. Defendant Missouri Donuts, Inc. is a Florida corporation and, upon information and belief, its principal place of business is located in Clearwater, Florida. Defendant was a Dunkin' Donuts franchisee for a shop located at 600 South Missouri Avenue, Clearwater, Florida (the "Clearwater Shop"), pursuant to a Franchise Agreement dated May 14, 1996. Defendant Missouri Donuts, Inc. was formerly licensed to use the Dunkin' Donuts and Baskin-Robbins

trademarks, trade name, and trade dress in accordance with the terms of the Franchise Agreement.

6. Defendant Norberto Botelho is a citizen and resident of the State of Florida. Defendant was an owner and operator of the Clearwater Shop. Defendant Norberto Botelho is an officer, member, and/or shareholder of Missouri Donuts, Inc., and executed a Personal Guarantee pursuant to which he promised to personally perform and be bound by the provisions of the Franchise Agreement.

7. Defendant Maria Botelho is a citizen and resident of the State of Florida. Defendant was an owner and operator of the Clearwater Shop. Defendant Maria Botelho is an officer, member, and/or shareholder of Missouri Donuts, Inc., and executed a Personal Guarantee pursuant to which she promised to personally perform and be bound by the provisions of the Franchise Agreement.

### Venue and Jurisdiction

8. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1338, and 1367. The amount in controversy exceeds $75,000, exclusive of costs and interest.

9. Venue is properly in this District pursuant to 28 U.S.C § 1391(b).

10. This Court has *in personam* jurisdiction over the Defendants because they are residents and citizens of this District, they conduct business in this District, and the events giving rise to the claims occurred in this District.

### Background Facts
### The Dunkin' Donuts System

11. Dunkin' Donuts is a franchisor of the Dunkin' Donuts franchise system.

12. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' has a license to use and license others to use these marks and trade name and along with its predecessors has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

13. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

14. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

15. The Dunkin' Donuts marks have been widely advertised and promoted by Dunkin' Donuts over the years. Between 1971 and 2007, Dunkin' Donuts and its franchisees have spent more than $1,925,000,000 on advertising and promoting the Dunkin' Donuts marks. Dunkin' Donuts spent approximately $190,000,000 in fiscal year 2007 alone on advertising and promotion.

16. Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops in the United States and 2,000 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

17. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known

trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

### The Parties' Rights and Obligations Under the Franchise Agreement

18. Defendants were licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of their Franchise Agreement.

19. The Franchise Agreement contains an agreement by Defendants concerning their obligations with regard to remodeling the shop during the franchise term. Specifically, Defendants agreed to remodel their shop by February 6, 2006. Franchise Agreement § 5.5; Contract Data Schedule Item G.

20. The Franchise Agreement also contains acknowledgments and agreements by Defendants concerning the importance of maintaining Dunkin's operational standards. For example, the applicable paragraphs of the Franchise Agreement include:

> a) 5.0. FRANCHISEE understands and acknowledges that every detail of the Dunkin' Donuts System is important to DUNKIN' DONUTS, to FRANCHISEE and to other Dunkin' Donuts franchisees in order to develop and maintain high and uniform standards of quality, cleanliness, appearance, service, facilities, products and techniques to increase the demand for Dunkin' Donuts products and to protect and enhance the reputation and goodwill of DUNKIN' DONUTS.
>
> ... FRANCHISEE also agrees:
>
> b) 5.1.1. To use all materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product preparation and delivery prescribed by or which conform with DUNKIN' DONUTS' standards and specifications; and to carry out the business covered by this Agreement in accordance with the operational standards and specifications established by DUNKIN' DONUTS and set forth in DUNKIN' DONUTS' operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to DUNKIN' DONUTS' franchisees from time to time.

6

     c)    5.1.3. To offer for sale at the Dunkin' Donuts Shop all products that are, from time to time, designated in writing as approved for sale at Dunkin' Donuts Shops by DUNKIN' DONUTS; and to refrain from offering for sale any product(s) that have not been so designated in writing as approved by DUNKIN' DONUTS.

     d)    5.1.4. To maintain at all times a sufficient supply of approved products.

21. Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system. Franchise Agreement § 8.0.1.

22. The Franchise Agreement also contains acknowledgments and agreements by the Defendants concerning events of default and Dunkin's right to terminate the Franchise Agreement. For example, applicable paragraphs of the Franchise Agreement provide as follows:

9.0. FRANCHISEE shall be in default under this Agreement:

9.0.2 If FRANCHISEE fails to . . . perform, observe or comply with any of FRANCHISEE's duties and obligations under this Agreement;

9.1 **Thirty Day Cure Period.** - Except as otherwise provided in this Section 9, FRANCHISEE shall have the right to cure FRANCHISEE's default under this Agreement within thirty (30) days after written notice of default from DUNKIN' DONUTS is received or refused, as the case may be.

9.4. **Termination.** - If FRANCHISEE fails to cure any default to DUNKIN' DONUTS' satisfaction within the applicable period following notice from DUNKIN' DONUTS, DUNKIN' DONUTS may, in addition to all other remedies at law or in equity or as otherwise set forth in this Agreement, immediately terminate this Agreement. Such termination shall be effective immediately upon receipt of a written notice of termination from DUNKIN' DONUTS.

23. Under the terms of the Franchise Agreement, Defendants agreed they would use Dunkin' Donuts' proprietary marks, including, but not limited to, their trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the agreement. Franchise Agreement §§ 7.0 and 7.1.

24. Defendants agreed that any unauthorized use of the Dunkin' proprietary marks during or after the expiration or earlier termination of the agreement would constitute an incurable default causing irreparable harm subject to injunctive relief. Franchise Agreement §§ 7.1, 9.4.2.

25. The Franchise Agreement further provides that Defendants shall pay to Dunkin' all damages, costs and expenses, including attorneys' fees, incurred by Dunkin' as a result of any default or termination of the Franchise Agreement. Franchise Agreement § 9.3, § 9.4.

### The Sublease

26. Defendant Missouri Donuts, Inc. became a sublessee of Dunkin' Realty for the Clearwater Shop pursuant to a Sublease dated May 14, 1996 (the "Sublease"). The Sublease provides that Dunkin' Realty has the right to terminate Defendants if the corresponding Franchise Agreement for the shop is terminated for any reason. Further, the Sublease gives Dunkin' Realty the right, upon termination, to enter upon the premises and repossess the same and expel Defendants. On May 26, 2006, Dunkin' Realty transferred all of its rights to the Clearwater Shop to DB Real Estate I.

### Defendants' Defaults
### Failure to Remodel the Clearwater Shop

27. Despite their clear contractual obligation to do so, Defendants failed to remodel the Clearwater Shop by the February 6, 2006 deadline.

28. On or about January 21, 2009, Dunkin' served a Notice of Default and Notice to Cure on Defendants advising them that they were in default under the Franchise Agreement for failing to remodel the Clearwater Shop, and providing them with 30 days from receipt of the Notice in which to cure the default.

29. Defendants failed to remodel the Clearwater Shop within the time provided in the Notice of Default and Notice to Cure.

### Failure to Participate in Mandatory Dunkin' Program

30. Dunkin's standards require Defendants to adopt its Next Generation Sandwich Station (NGSS) by April 1, 2008. On or about January 21, 2009, Dunkin' sent Defendants a Notice of Default and Notice to Cure notifying Defendants that they had taken none of the steps required to order the NGSS equipment, including menu boards and Radiant point of sale equipment, and have it installed and operational by April 1, 2008. Because of this failure, Defendants were notified that they were not in compliance with the NGSS standards and were thus in default under their Franchise Agreement. Dunkin' provided Defendants with thirty (30) days to cure their defaults, but Defendants failed to cure within the time period.

31. Despite the fact that Dunkin' has brought operational standards violations to the attention of Defendants, they have failed to cure these violations and bring their shops into conformity with the required standards.

### Notice of Termination

32. Pursuant to the applicable provisions of the Franchise Agreement and Sublease, on May 12, 2009, Plaintiffs served a Notice of Termination on Defendants, terminating the Franchise Agreement and Sublease based on Defendants' failure to remodel their shop and failure to participate in the NGSS program; and demanding that they cease using Dunkin' Donuts' trade names and proprietary marks immediately upon the effective date of termination, and thereafter comply with their post-termination obligations contained in the Franchise Agreement.

33. Despite receiving the May 12, 2009 Notice, Defendants failed to comply with their post-termination obligations.

34. To date, Defendants have refused to accept termination and continue to operate their shop as if they were licensed franchisees, which they are not.

## COUNT I
### (Breach of Contract)

35. The allegations of paragraphs 1 through 34 are hereby incorporated by reference.

36. The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Franchise Agreement.

37. These breaches constitute grounds for terminating the Franchise Agreement.

38. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Breach of Contract – Sublease)

39. The allegations of paragraphs 1 through 38 are hereby incorporated by reference.

40. The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Sublease.

41. These breaches constitute grounds for terminating the Sublease.

42. As a result of Defendants' actions, DB Real Estate I has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Trademark Infringement)

43. The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

44. Defendants' use of the Dunkin' Donuts trademarks, trade names, and trade dress outside the scope of the Franchise Agreement is likely to confuse or deceive the public into believing, contrary to fact, that their shop is licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin', or are in some other way connected or affiliated with Dunkin'. Such unlicensed use infringes Dunkin's exclusive rights in the Dunkin' Donuts trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

45. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

46. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (Trade Dress Infringement)

47. The allegations of paragraphs 1 through 46 are hereby incorporated by reference.

48. Defendants' shop is identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' uses for the doughnut shops operated by Dunkin's licensees.

49. Defendants' use of the trade dress that is identical or confusingly similar to Dunkin's trade dress constitutes a false designation of the origin of Defendants' shop, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation,

11

connection, or association of Defendants' shop with the Dunkin' shops operated by Dunkin' licensees. Such adoption of Dunkin's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

50. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

51. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
### (Unfair Competition)

52. The allegations of paragraphs 1 through 51 are hereby incorporated by reference.

53. Defendants' use of the Dunkin' Donuts trademarks, trade names, and trade dress outside the scope of their Franchise Agreement is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such continued unauthorized use of the Dunkin' Donuts trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

55. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a.  Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreement and Sublease, and constitutes grounds for terminating the Franchise Agreement and Sublease;

b.  Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreement and Sublease by Defendants;

c.  Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement and Sublease as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

d.  Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

e.  Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreement and Sublease, and taking all steps required to transfer their leasehold interests in the Clearwater Shop to Plaintiffs or their designee, in the event that Plaintiffs elect to exercise any rights they or any of their affiliates or subsidiaries might have in such interests;

f.  Award Plaintiffs judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

g.  Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  h. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

  i. Award Plaintiffs such other relief as this Court may deem just and proper.

Dated: May 15th, 2009

          Respectfully submitted,

          *Alicia J. Schumacher*
          Alicia J. Schumacher, FBN 864330
          Keith D. Skorewicz, FBN 583618
          BUSH ROSS, P.A.
          P.O. Box 3913
          Tampa, Florida 33601-3913
          aschumacher@bushross.com
          kskorewicz@bushross.com
          Telephone: (813) 224-9255
          Facsimile: (813) 223-9620

          Robert L. Zisk
          Jimmy Chatsuthiphan
          GRAY, PLANT, MOOTY, MOOTY
           & BENNETT, P.A.
          2600 Virginia Avenue, N.W., Suite 1111
          Washington, D.C. 20037
          Telephone: (202) 295-2200
          Facsimile: (202) 295-2250
          robert.zisk@gpmlaw.com
          jimmy.chatsuthiphan@gpmlaw.com
          Telephone: (202) 295-2200
          Facsimile: (202) 295-2250

          Attorneys for Plaintiffs
          Dunkin' Donuts Franchised Restaurants,
          DD IP Holder LLC, and DB Real Estate
          Assets I LLC

636946.01